UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARIA DEWITT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | SA-25-CV-510-OLG (HJB) |
| | § | |
| MAGNIFICUS CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**<u>CORRECTED</u> REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**\*

**To the Honorable United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns Defendant's Motion to Dismiss Counts 1, 3, 4, 5, and 6 of Plaintiff's Amended Complaint.  (Docket Entry 10.)  Pretrial matters have been referred to the undersigned, pursuant to 28 U.S.C. § 636(b).  (*See* Docket Entry 6.)  For the reasons set out below, I recommend that Defendant's motion (Docket Entry 10) be **GRANTED**.

**I.     Jurisdiction.**

Plaintiff's *pro se* Amended Complaint alleges violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq*., as well as statutory and common-law claims under Texas law.  (Docket Entry 5.)  The Court has original jurisdiction over her ADEA claim pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over her state claims pursuant to 28 U.S.C. § 1367.  I have the authority to issue this Report and Recommendation pursuant to 28 U.S.C. § 636(b).

**II.    Background.**

In her Amended Complaint, Plaintiff alleges that she is a nurse practitioner who was hired by Defendant on April 9, 2024, to perform contract services at the Fort Sam Houston Virtual

---

\*Part V was corrected to reflect the undersigned's recommendation that Count Three, not Count Four, be dismissed without prejudice. *Cf*. Part IV(B), *infra*.

Medical Clinic ("VMC"). (Docket Entry 5, at 5.) According to Plaintiff, she completed a Drug Enforcement Administration ("DEA") form while onboarding for the position; she later discovered that, after she submitted the form, Defendant's employee Elyse Bernos altered the document to falsely indicate that Plaintiff had surrendered her DEA Certificate of Registration ("COR")—the source of her authority to issue prescriptions—when in fact she had not. (*Id.* at 6.)

Plaintiff was terminated from her position approximately one month after she was hired. (Docket Entry 5, at 8.) She subsequently applied for unemployment benefits with the Texas Workforce Commission ("TWC"), which initially denied her benefits on the basis that she had been terminated for misconduct. (*Id.* at 9.) Following a hearing on the matter—during which Defendant's employees allegedly made false and malicious statements—the TWC reversed its decision and granted her benefits. (*Id.* at 9–11.) Plaintiff further alleges that, after her termination, Defendant's employees made false statements to the DEA, which resulted in the revocation of her prescribing authority as a nurse practitioner. (*Id.* at 6.)

Plaintiff's Amended Complaint asserts six causes of action: (1) intentional infliction of emotional distress ("IIED"); (2) forgery of a legal document; (3) defamation and slander; (4) wrongful termination; (5) violation of the Texas Labor Code §§ 61.001, *et seq.*; and (6) age-based discrimination in violation of the ADEA. (*Id.* at 12–15.)

Defendant has moved to dismiss all but Plaintiff's forgery claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket Entry 10.) Plaintiff has responded (Docket Entry 12), and Defendant has replied (Docket Entry 13.)

## III.   Applicable Legal Standard.

The Court must dismiss a complaint when it fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Dismissal "can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Sims v.*

*Allstate Fire & Cas. Ins. Co.*, 746 F. Supp. 3d 417, 420 (W.D. Tex. 2024).  To survive dismissal, the complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has facial plausibility when the well-pleaded facts allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"In determining whether to grant a motion to dismiss, the district court must not go outside the pleadings." *Bob Davis Paint & Drywall Inc. v. Valspar Corp.*, 452 F. Supp. 3d 589, 596 (S.D. Tex. 2020) (quoting *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)).  This means that the Court's inquiry generally "is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted).  But the Court may also consider documents attached to a motion to dismiss that "are referenced in the complaint and are central to the plaintiff's claims," *id.*, as they are deemed "part of the pleadings," *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

In ruling on a 12(b)(6) motion to dismiss, "the Court assumes the truth of well-pleaded factual allegations and reasonable inferences therefrom." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (citation modified).  However, the Court does not assume the truth of "legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc) (citation modified).

## IV.    Discussion.

As noted above, Defendant seeks dismissal of five of Plaintiff's six claims.  (*See* Docket Entry 10, at 4–12.)  The Court considers each claim in turn.

3

### A.  *Count One: IIED.*

Plaintiff's Amended Complaint alleges that Defendant maliciously forged a DEA form, slandered her in her termination notice and in proceedings before the TWC, wrongfully terminated her, delayed her wages and refused to issue a corrected W-2 tax form.  (Docket Entry 5, at 12–13.)  Among other things, Defendant argues that, even accepting Plaintiff's allegations as true, they fall short of the demanding legal standard for plausibly stating an IIED claim.  (Docket Entry 10, at 6.)  Defendant's argument is well-taken.

"Under Texas law, a plaintiff bringing an IIED claim must demonstrate that the defendant [1] intentionally or recklessly [2] engaged in extreme or outrageous conduct [3] that resulted in severe emotional distress."  *Stelly v. Duriso*, 982 F.3d 403, 407–08 (5th Cir. 2020) (citing *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 66 (Tex. 1998)).  "The severity of distress is an element of the cause of action, not merely of the damages."  *Munoz v. H&M Wholesale, Inc.*, 926 F. Supp. 596, 612 (S.D. Tex. 1996) (collecting cases).

To establish that the defendant's conduct was "extreme and outrageous," a plaintiff must prove that it was "beyond all possible bounds of decency," "atrocious," and "utterly intolerable in a civilized society."  *Jones v. Dallas Cnty.*, 47 F. Supp. 3d 469, 479 (N.D. Tex. 2014) (quoting *Tex. Farm Bureau Mut. Ins. Cos. v. Sears*, 84 S.W.3d 604, 610 (Tex. 2002)).  "[T]hat an action is intentional, malicious, or even criminal does not, standing alone, mean that it is extreme or outrageous for purposes of [IIED]."  *Brewerton v. Dalrymple*, 997 S.W.2d 212, 215 (Tex. 1999) (citing RESTATEMENT (SECOND) OF TORTS § 46(1) (1965)).  Applying these standards to the present case, none of the conduct alleged by Plaintiff qualifies as "extreme and outrageous," as required to state a plausible IIED claim.

Additionally, even if the most serious of Plaintiff's allegations—malicious forgery—were sufficiently extreme to qualify as IIED, no claim would be available to her.  That is because IIED

4

is "first and foremost, a 'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (citing *Standard Fruit and Vegetable Co.*, 985 S.W.2d at 68). The "clear purpose" of an IIED claim is "to supplement existing forms of recovery by providing a cause of action for egregious conduct" that might otherwise go unremedied. *Standard Fruit and Vegetable Co.*, 985 S.W.2d at 68. In this case, Plaintiff has asserted an independent claim for forgery, and Defendant does not seek to dismiss that claim. In such circumstances, an IIED claim based on the same conduct is unavailable.

For the foregoing reasons, Plaintiff's IIED claim should be dismissed.

**B.** *Count Three: Defamation/Slander.*

Plaintiff's Amended Complaint alleges that Defendant made disparaging statements in her termination notice and during the post-termination TWC proceedings, including claims of inappropriate behavior, incomplete training, insubordination, and regarding her need for work accommodations. (Docket Entry 5, at 13–14.) Plaintiff alleges that the statements were false, that they were made with actual malice, and that they caused her reputational harm. (*Id.* at 14.)

Defendant argues that, to the extent the allegedly slanderous statements were made in the context of a quasi-judicial proceeding before the TWC, they are absolutely privileged and cannot be the basis of a defamation claim. (Docket Entry 10, at 7–8.) Defendant is correct on this point. "Communications made in due course of a judicial proceeding will not serve as the basis of a civil action for libel, or slander, regardless of the negligence or malice with which they are made." *Lopez v. Star Tex. Gasoline & Oil. Dist.*, No. 2:14-CV-52, 2015 WL 12550935, at *5 (S.D. Tex. June 3, 2015) (citations omitted). That immunity also "extends to statements made in quasi-judicial proceedings before governmental executive officers, boards, and commissions which

exercise quasi-judicial powers." *Lopez*, 2015 WL 12550935, a \*5 (citing *Gallegos v. Escalon*, 993 S.W.2d 422, 425 (Tex. App.—Corpus Christi 1999, no pet)). Indeed, the Texas Labor Code specifies that "[a]n oral or written statement made to the [TWC] or to an employee of the [TWC] in connection with the discharge of the [TWC"'s] or the employee's duties under [the Texas Unemployment Compensation Act] may not be the basis for an action for defamation of character." TEX. LABOR CODE § 301.074. Accordingly, Plaintiff "cannot make out a claim for libel, slander or defamation based on statements . . . made during administrative proceedings in front of the TWC." *Lopez*, 2015 WL 12550935, at \*6; *see King v. Lubbock ISD*, No. 5:24-CV-58-H-BV, 2025 WL 2994741, at \*25 (N.D. Tex. July 18, 2025) ("[A]ny communications . . . before the [TWC] . . . cannot be the basis for defamation claims."), *report and recommendation adopted*, No. 5:24-CV-58-H, 2025 WL 2715320 (N.D. Tex. Sept. 24, 2025).

In response to Defendant's motion, Plaintiff refers to additional defamatory statements made elsewhere—to the DEA, in her termination notice, and to a United States Army hiring officer. (Docket Entry 12, at 5–6.) As noted above, Count Three of the Amended Complaint mentions the termination notice; it does not mention the DEA, but it does incorporate all the preceding paragraphs, in which Plaintiff alleges that false statements were made to the DEA. (*See* Docket Entry 5, at 6–8, 13.) The complaint makes no mention of statements to an Army hiring officer.

As currently presented, none of these additional alleged statements can support a defamation claim. With regard to statements made in the termination notice, Defendant correctly replies that Plaintiff has not alleged that they were published or communicated to a third party, as required by Texas law. (Docket Entry 13, at 4 (citing *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 579 (Tex. 2017)). With regard to statements made before the DEA, they are protected by the absolute privilege discussed above, as a revocation of the authority to prescribe medications is "a quasi-judicial determination." *Oregon v. Ashcroft*, 192 F. Supp. 2d 1077, 1085–86 (D. Ore. 2002)

6

(citing cases). And there are no facts in the complaint to support a claim of defamation in statements to an Army hiring officer.

For the above reasons, Plaintiff's defamation claim is subject to dismissal; however, as a *pro se* party, Plaintiff should be given an additional opportunity to state a claim for relief as to defamation, either by alleging that the defamatory statements in her termination notice were in fact published to a third party, or by stating in her complaint the allegedly defamatory statements that were made to the Army hiring officer. *See Wiggins v. La. State Univ.-Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (noting that *pro se* plaintiff should be given opportunity to plead her best case before dismissal with prejudice).

### C. *Count Four: Wrongful Termination.*

Plaintiff alleges that Defendant terminated her without cause by fabricating performance and behavioral issues and a government request to discharge her. (Docket Entry 5, at 14.) Such claim is generally barred, as "[t]he long standing rule in Texas is that employment for an indefinite term may be terminated at will and without cause." *Winters v. Hous. Chron. Publ'g Co.*, 795 S.W.2d 723, 723 (Tex.1990) (citing *East Line & R.R.R. Co. v. Scott*, 10 S.W. 99, 102 (1888)). Accordingly, Defendant moves to dismiss this claim. (Docket Entry 10, at 9–10.)

In her response, Plaintiff suggests that an exception to this rule exists for whistleblowers, and she cites the Texas Whistleblower Act (Docket Entry 12, at 7 (citing TEX. GOV'T CODE §§ 554.001, *et. seq.*).) However, as Defendant correctly points out (*see* Docket Entry 13, at 5), the Texas Whistleblower Act applies only to public employees and government entities. *See* TEX. GOV'T CODE §§ 554.001(2), 554.001(4), 554.002(a); *see Reed v. Mgmt. & Training Corp.*, No. 302CV0367H, 2002 WL 1812092, at *5 (N.D. Tex. Aug. 5, 2002) (granting summary judgment on whistleblower claim because "Plaintiff was not a public employee"). With regard to whistleblowing against private companies, Texas courts have declined to create an exception to

the at-will rule. *See Thompson v. El Centro Del Barrio*, 905 S.W.2d 356, 359 (Tex. App.—San Antonio 1995, writ denied); *Burgess v. El Paso Cancer Treatment Ctr.*, 881 S.W.2d 552, 556 (Tex. App.—El Paso 1994, writ denied); *Ford v. Landmark Graphics Corp.*, 875 S.W.2d 33, 34 (Tex. App.—Texarkana 1994, no writ). For these reasons, Plaintiff's wrongful termination claim must be dismissed.

### D. *Count Five: Texas Labor Code Claim for Unpaid Wages*.

In Count Five of her Amended Complaint, Plaintiff alleges that she was deprived of wages in violation of the Texas Labor Code §§ 61.001, *et. seq*. (Docket Entry 5, at 14.) Defendant moves to dismiss this count on the grounds that Plaintiff was in fact paid these wages through the TWC, and that, in any event, Plaintiff's cause of action is untimely. The Court need only address the second point to conclude that dismissal is proper.

For wage claims, the Labor Code allows a party who has exhausted her administrative remedies before the TWC to bring a suit to appeal the TWC's order, provided that it is "filed not later than the 30th day after the date the final order is mailed." TEX. LABOR CODE § 61.062(b). Here, TWC documents attached to Plaintiff's amended complaint show that the final order in her case was mailed to her by the TWC on March 24, 2025. (Docket Entry 5, at 60.) Plaintiff did not file suit until May 8, 2025, more than 30 days after the order was mailed. (*See* Docket Entry 1.) Accordingly, Plaintiff's claim is untimely. Plaintiff does not dispute the untimeliness of her complaint in her response to the motion to dismiss. (*See* Docket Entry 12, at 7–8.) Count Five of the Amended Complaint must therefore be dismissed.

### E. *Count 6: Plaintiff's ADEA Claim*.

Plaintiff alleges that she was terminated due to her age (57) in violation of the ADEA. (Docket Entry 5, at 14–15.) Defendant responds that Plaintiff's claim must be dismissed for failure exhaust administrative remedies. (Docket Entry 10, at 11–12.)

8

The ADEA requires administrative exhaustion prior to filing suit in federal court. 29 U.S.C. § 626(d); *Melgar v. T.B. Butler Publ'g Co., Inc.*, 931 F.3d 375, 378–79 (5th Cir. 2019). Failure to exhaust administrative remedies is a proper basis for dismissal under Rule 12(b)(6). *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379–80 (5th Cir. 2002). Dismissal is appropriate if, based on the facts pleaded and judicially noticed, a successful affirmative defense is apparent. *Hall v. Hodgkins*, 305 Fed. App'x 224, 227–28 (5th Cir. 2008).

Here, Defendant argues that Plaintiff never filed a charge of age discrimination with the TWC or the EEOC. (Docket Entry 10, at 12.) Neither facts pleaded in the Amended Complaint nor the documents attached to it show otherwise, and Plaintiff does not respond to Defendant's exhaustion argument in its motion to dismiss. Accordingly, dismissal of Plaintiff's ADEA claim is appropriate.

## V.    Conclusion and Recommendation.

For the reasons set out above, I recommend that Defendant's Motion be **GRANTED**, and Plaintiff's Amended Complaint should be **DISMISSED IN  PART**. Counts One, Four, Five and Six of Plaintiff's Amended Complaint should be **DISMISSED WITH PREJUDICE**. Count Three should be **DISMISSED WITHOUT PREJUDICE**, and Plaintiff should be permitted to seek leave to file an amended complaint as to that Count. Count Two remains unaffected.

## VI.    Instruction for Service and Notice for Right to Object.

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this Report and Recommendation must be filed **within 14 days** after being served with a copy of the same, unless this time period is modified by the District Court. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

The parties shall file any objections with the Clerk of the Court and serve the objections on all other parties.  Absent leave of Court, **objections are limited to 20 pages in length**.  An objecting party must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; "objections that are frivolous, conclusory, or general in nature needn't be considered."  *Williams v. Lakeview Loan Serv. LLC*, 694 F. Supp. 3d 874, 881 (S.D. Tex. 2023) (citing *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987)).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a *de novo* review by the District Court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to, proposed findings and conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on February 25, 2026.

Henry J. Bemporad
United States Magistrate Judge

10